Good morning. My name is Isaiah Wheaton. I'm counsel for the petitioners Margarita Cardenas De Castaneda, Francisco Castaneda Cardenas, Hubert Castaneda Cardenas, and Reina Castaneda Cardenas. Miss Cardenas De Castaneda, the petitioner I first mentioned, is the mother of the other three petitioners. This morning I will address the denial of the petitioners' due process rights as a result of the ineffective assistance of their prior counsel. Petitioners were prejudiced by prior counsel's ineffective assistance in that they were deprived of the appellate process afforded by the Motion to Reopen procedure, and they were subjected to sanctions under Immigration and Nationality Act Section 240BD for failure to voluntarily depart by the deadline specified in the Board of Immigration Appeals, March 8, 2007 order. The prejudice results when the performance of counsel was so inadequate that it may have affected the outcome of proceedings. That's the Mohammed V. Gonzales case. We don't know that, though, do we? Excuse me, Your Honor? We don't know that, do we? We don't know that. We don't know if the counsel was ineffective, do we? Well, in this case, Your Honor, counsel effectively – it was sort of like an abandonment. So you say, but we don't know that, do we? I understand that the record in this case is incomplete because of how this came about. Council for – prior counsel for the petitioners represented them through the initial immigration judge proceeding. After that point, there was no formal withdrawal from the case, but suddenly everything in the case was being filed in pro per by the lead petitioner here, Ms. Margarita Cardenas de Castaneda. Now, everything was filed in English. Everything indicated a knowledge of the law and procedure here. It bears noting that Ms. Cardenas de Castaneda does not speak English, has no legal training, is not a sophisticated individual. All of her children were minors at the time of these proceedings. So it's inconceivable that she could have filed these papers on her own without help, and that's not a fact. But it's not inconceivable that the lawyer, who I guess was not generally an immigration lawyer, did they say somewhere in the papers? I believe he is an immigration lawyer. Anyway, it's not inconceivable that he said, well, you know, I'll represent you in front of the IJ, but I'm not going to get myself involved on appeal, which is a separate counsel notice, a separate representation. I'll prepare the papers for you if you want, but you're pro per, and that's why the notice went to her and not to him. And I understand that point, Your Honor. But we don't know that, do we? Because what you need to do, what you need, the facts have to be developed from a trier of fact, like the BIA maybe or the IJ. And in this case, it was simply impossible for them to do that. My clients understood that they were being represented by counsel. They understood that throughout these proceedings until I contacted them to indicate that we had been appointed as pro bono counsel. Their understanding was that their prior counsel was, in fact, representing them. And they had a lawyer who was out there looking after their interests, who was, among other things, responding to these deadlines. And I understand your point. That's what they say. Yes. Because the Lozada approach hasn't been followed and hasn't been taken up in front of the agency, we don't know that, do we? I understand that. There are exceptions to the Lozada case in cases where there is an impossibility of ability to comply. Again, in this case — There's nothing impossible here. Your Honor, by the time — But the glitch may have occurred, for all we can tell from the record. The glitch may have occurred because she went off to Texas because of her brother. I'm not saying anything wrong with it. She went off to Texas, and the notice came from the BIA, and she didn't get it. And we don't know when she got it. We just know when she finally got it, she went to the attorney. I don't know that the attorney did anything wrong. It may have already been beyond the time by the time she went to him. I don't know that. We don't know that. She doesn't say in her affidavit, by the way. I got back from Texas on umpty-umpt date. My neighbor gave it to me on day two. I took it to the lawyer on day three. That's not in her affidavit. We don't know any of that. Do it. I understand the point, Your Honor. It's our contention that by the time that my clients understood the fact that they were not, in fact, being represented by counsel, that something had changed from the time of the initial immigration judge proceeding to the time that there was this filing of the appeal. Throughout this process, all they understood was they had an attorney that was representing them. And that, again, they understood that up until the time that we were contacted, that we were put in contact with them as pro bono counsel. And in light of that fact that we were well into, obviously, this appeal process, by the time that contact took place, it was impossible for them to rewind and go back to the BIA, to the IJ, and raise these issues with them. We were already in front of this panel, and at that point, all we could do was raise these issues here. Thank you, Your Honor. I'll reserve the remainder of my time. Great. Well, why don't we hear from the government. Mr. Leist. May it please the Court. My name is Jeffrey Leist. I'm here on behalf of the government. As this Court has discussed, this is not an impossible case to bring before the Board. The fact that the petitioners just became aware of the ineffective assistance while in proceedings before this Court, that would go towards tolling. There's still a requirement that these issues be exhausted by a motion to reopen to the Board. And there's exceptions for the time and numerical limitations on motions to reopen, if you can put forward the case that the reason why you're filing this motion late, the reason why you're filing this motion as a second motion to reopen, is because of ineffective assistance of counsel. Moreover, the fact that it's this late in the proceedings doesn't really obviate the need to do so. There's two other circumstances that come to mind, where even after briefings occurred, a motion to reopen is still required. One, if an AOE becomes eligible to adjust their status, they can't just tell the Court, hey, I'm eligible now, decide this, they've got to file a motion to reopen. Similarly, if an AOE has a criminal conviction that's overturned, they can't just present that evidence to this Court, they have to present it to the Board in the first instance of the motion to reopen, even if a briefing has been completed. In this case, the Petitioner haven't done so. And the exhaust requirement, as has been alluded to, is required because we don't know the veracity of these claims. We have the Petitioners putting forth these claims. We don't know if the Board, in this case, would have found ineffective assistance. We don't know if the Board, in this case, would have found that Losado was required. We don't know if the Board would have found prejudice in this case. So when there's no exhaustion, you deprive the Court, you deprive the government of the opportunity to address these issues ahead of basis. Let me ask you a practical question. I'm trying to put myself in the shoes of the alien in this situation. Would it have been permissible, even though briefing had been completed in our Court, to simultaneously file another motion to reopen showing that you had complied with matter of Losado and, in essence, asking for tolling on the time and number bar? Sure. There's no – I mean, in any way, you can file a motion to reopen at any point in time. If five minutes after this hearing is completed, the Petitioners want to file a motion to reopen, they can do so. And would it also be possible for counsel for the aliens to contact government counsel, in this case you, and see whether or not the Department might be willing to stipulate to a remand in order to permit the Board to consider the merits of this second untimely motion to reopen? Remand is really not appropriate in this case, because a remand, generally speaking, is because of an error on the part of the Board. Here, the Board hasn't done anything wrong, so it would be a motion to reopen for the Board. The Petitioners could definitely seek mediation in this case, hold this case in abeyance while that was being pursued. But in terms of remand, I would say the Court should not remand the case. So it would not be typical, then, for the lawyer now representing the alien to contact your office and see if the government would be willing? Right. They can contact DHS and see if they'll join in the motion to reopen. But it sounds to me like the answer is going to be pretty much no every time. For DHS, very well maybe. But because they can seek tolling, they wouldn't necessarily have to have a joint motion to reopen. They can have a numerical and a time limitations waive. But they'd have to lay out in their moving papers to show that they were entitled to the tolling. Right, exactly. Okay. Are there any further questions? I don't have anything. Judge Reimer, do you have anything? No, thank you. I think not. Thank you very much, Ms. Feliz. Mr. Wheaton? I actually have nothing further, Your Honor. All right. Very well. Ms. Wheaton, let me say on behalf of the Court, we very much appreciate the fact that you took this case on a pro bono basis. And thank you for accepting the appointment. Yes, sir. Thank you for the opportunity to appear before you. Thank you very much. The case just argued is submitted. The next three cases on the calendar have also been ordered submitted on the briefs. We will now hear argument in Thomas Investment Partners Ltd. v. The United States.
judges: Fernandez, Rymer, Tallman, Cjj